## Kalamazoo Stationery Co. v. Sabold-Herb Co., Appellant.

Argued November 27, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Jay W. Sechler,* for appellant.—Plaintiff was bound to deliver to defendant, on or before November 1, 1927, merchandise in the aggregate amount of $10,431.85: York Metal & Alloys Co. v. Steel Co., 280 Pa. 585; Holloway v. Frick, 149 Pa. 178; Producers Coke Co. v. Hoover, 268 Pa. 104; Achenbach v. Stoddard, 253 Pa. 338; Germantown Dairy Company v. McCallum, 223 Pa. 554; Hudson v. Hyman, 85 Pa. Superior Ct. 245.

Defendant in its set-off and counterclaim, and amended set-off and counterclaim, properly claims damages of plaintiff for all losses sustained by the former in consequence of plaintiff's admitted breach of its promise of September 23, 1927; more particularly for loss of selling commissions and profits, injury to its business

generally, and freight charges: McHose v. Fulmer, 73 Pa. 365; Culin v. Glass Works, 108 Pa. 220; Macan v. Belting Co., 264 Pa. 384.

The general rule allowing full compensation does not limit the injured party simply to recovery of lost profits, but extends to all items of injury naturally arising from breach of the contract and capable of proof: Dravo Contracting Co. v. James Rees & Sons Co., 291 Pa. 387.

*C. Brewster Rhoads,* with him *Laurence H. Eldredge* and *Roberts & Montgomery,* for appellee.—Plaintiff was not under any legal obligation to deliver merchandise to defendant if it did not see fit so to do.

Defendant can not recover as damages loss of gross profits, general loss of future business, loss of selling commissions on goods not sold, and moneys expended for express and freight charges of an unspecified nature, which are the only damages alleged: Seward v. Mfg. Co., 266 Pa. 457; Pope v. Ferguson, 82 N. J. L. 566; Clyde Coal Co. v. R. R., 226 Pa. 391; Michelin Tire Co. v. Schulz, 295 Pa. 140.

OPINION BY MR. JUSTICE FRAZER, January 6, 1930:

Plaintiff sued to recover $5,374.33, claimed to be due for goods shipped to defendant under a contract of consignment and subsequently sold by defendant but not accounted for by it. An affidavit of defense was filed admitting the contract and deliveries made thereunder and the value of the goods, and setting up in defense a counterclaim amounting to $13,070.65. Plaintiff entered a rule for judgment for $5,277, being the part of the claim admitted, at the same time filing a reply to defendant's counterclaim, raising the question of its sufficiency in law. On the argument of the rule, leave was given defendant to file an amended affidavit of defense and counterclaim. This was done, whereupon plaintiff again took a rule to show cause why judgment should not be entered

for the part of its claim admitted and filed a reply to defendant's amended set-off and counterclaim raising a question of law as to the sufficiency of the counterclaim. The court below made absolute the rule for judgment in the amount of $5,059.43, and defendant appealed.

The counterclaim is based on the allegation that plaintiff failed to ship goods which had been ordered by defendant and that as a result of such failure defendant sustained losses by reason of being unable to resell the goods and to complete orders therefor, and also suffered damage to the extent of $10,000 because of loss of trade and customers, due to defendant's inability to make deliveries.

The rights of the parties arose out of a written and a supplemental oral contract between them. Turning to them, we find the written contract is not an agreement of sale but a consignment of goods, whereby plaintiff, as consignor, agreed to deliver from time to time to defendant such goods "as it in-its judgment sees fit," the consignor, defendant here, to "accept possession......and hold and care for the same as the property of the consignor." Title to the goods or the proceeds thereof is at all times to be in the consignor and they are to be "at all times, subject to and under the direction and control" of the consignor. In event of sale, the title is to pass "directly from the consignor to such person or persons to whom the same shall be sold." The agreement further provides that the consignee should sell the goods, collect the price "for and in behalf of the consignor," and remit the proceeds immediately to the consignor minus the difference between the invoice price of the goods to the consignee and the price at which the latter had resold them. The agreement contains a final clause making it "subject to termination by either party at any time."

It is clear that this agreement is not one for the sale of goods but merely one for the delivery of goods to de-

fendant on consignment for the purpose of sale by defendant, he to collect and remit the proceeds as plaintiff's agent and to receive as compensation for his services the difference between the price put on the goods by plaintiff and the price at which defendant sold them. Plaintiff was not bound to ship or deliver any particular amount of goods, and had absolute discretion in the matter. There could be no liability to defendant consequently for failure to make any particular shipment unless it is found in the supplemental agreement referred to in the amended affidavit of defendant and the counterclaim.

In its counterclaim defendant first refers to the written agreement of consignment and makes it a part of the counterclaim. It is then averred that on September 23, 1927, plaintiff and defendant entered into "an oral agreement supplementary to the aforesaid agreement," wherein plaintiff expressly agreed to ship to defendant, on or before a stated date, merchandise for a specified price, on which goods defendant was to receive a commission of 5% "in addition to the difference between the increased price at which the defendant might sell the said merchandise and the invoice price thereof as provided in the said contract of consignment of January 11, 1926."

Breach of this contract in part is alleged, although defendant admits part of the goods were shipped, and the court below in fact allowed defendant the extra 5% commission on the part so shipped. Defendant makes further claim, however, for commission on the entire amount of the order, for loss of the profits he would have made represented by the difference between the invoice price to him and the sale price to his customers according to the contract, and for injury to his business and loss of customers which resulted from plaintiff's failure to ship the goods and consequent inability of defendant to supply their requirements.

We deem it unnecessary to discuss the question whether defendant has adopted the proper measure of his

damage, it being apparent the intention of the parties was that the supplemental oral agreement should modify the original written one only in so far as it was inconsistent therewith. Defendant itself adopts this construction by expressly making the written agreement part of the counterclaim, and claiming partly under both agreements. Compensation, for example, is claimed under the written agreement plus the additional commission allowed by the supplemental agreement. Construing the two agreements as a whole, in the light of the averments in the counterclaim, there is nothing to show such change in the transaction as would create the relation of vendor and purchaser, a substitute for that of consignor and consignee, which would deprive plaintiff of the right, expressly reserved in the written agreement, to deliver only such goods from time to time as it might see fit. Surely if such an express privilege is to be taken away it is not asking too much of defendant to require him to specifically aver an agreement to that effect. Not having done so, it is a fair inference that no such change was intended.

The judgment is affirmed.